# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

TERESA BUCHANAN                                          CIVIL ACTION

VERSUS
                                                         NO. 16-41-SDD-EWD
F. KING ALEXANDER ET AL

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

If Court does not dismiss all of the claims in the Complaint (Doc. 1) of Teresa Buchanan ("Plaintiff")
pursuant to the pending Motion for Rule 12(c) Judgment on the Pleadings (Doc. 26), F. King Alexander,
Damon Andrew, A.G. Monaco and Gaston Reinoso (collectively "Defendants"), in their personal and official
capacities, urge this Court to enter a summary judgment dismissing the Complaint (Doc. 1) of Teresa
Buchanan ("Plaintiff") with prejudice at Plaintiff's cost including reasonable attorney fees on the following
grounds: 1) the Eleventh Amendment grants state officials sovereign immunity; 2) state officials are not
persons as defined by 42 U.S.C. §1983; 3) Defendants, in their personal capacities, are entitled to qualified
immunity; 4) Plaintiff lacks standing to assert claims on behalf of LSU students and/or faculty; 5) Plaintiff's
speech is not protected by the First Amendment; 6) an evidentiary hearing before a faculty committee
complies with the Fourteenth Amendment's due process requirements for termination of a tenured
employee; 7) Defendants in their personal capacities lack authority to grant the declaratory or injunctive
relief Plaintiff seeks; and 8) the Complaint fails to state any claim upon which relief can be granted by
Defendants.

Alternatively, and only in the event this Honorable Court determines Plaintiff has standing and has
asserted any claim for relief not barred by the Eleventh Amendment or by qualified immunity, then Damon
Andrew, A.G. Monaco and Gaston Reinoso, in their personal and official capacities, are entitled to
summary judgment dismissing the claims against them which are time-barred with prejudice at Plaintiff's
cost including reasonable attorney fees.

Claims barred by sovereign immunity, qualified immunity or time-barred or brought by an individual who lacks standing are without foundation and unreasonable entitling Defendants to recover reasonable attorney fees pursuant to 42 U.S.C. §1988(b) for the defense of any dismissed claim.

## I.      BACKGROUND

### A.      Statement of the Facts

On June 19, 2015, "the Board of Supervisors . . . dismissed" Plaintiff from her position of tenured associate professor."[1] The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("Board of Supervisors") is a constitutionally created entity required "to supervise and manage the institutions ... administered through its system"[2] including Louisiana State University Agricultural and Mechanical College ("LSU").[3] Only the Board of Supervisors has the authority to terminate a tenured faculty member. None of the Defendants have ever served on the Board of Supervisors[4] and therefore, did never actually ever have authority to dismiss Plaintiff "[n]ot even Alexander."[5] LSU employees can only recommend a PS-104.[6]

Despite Plaintiff's mistaken belief that tenure meant, "you could not be fired ... Unless you do something ... like a videotape of a party of you shooting cocaine with students while filming a pornography video or something,"[7] she was terminated for behavior which was the subject of complaints from students and school administrators.  Prior to Plaintiff's termination, an investigation was conducted to determine the validity of the complaints and Plaintiff given the opportunity to respond to the complaints. Prior to consideration of Plaintiff's dismissal by the Board of Supervisors, Plaintiff was afforded notice, prehearing meetings, a full evidentiary hearing before a faculty committee and several appeals of the

---

[1] Doc. 1, ¶41, Exhibit B
[2] La. Const. Art. 8 §7
[3] La. R.S. 17:3215(1)
[4] Exhibit A, Affidavit of Monaco
[5] Monaco Depo., p. 202, ll. 18
[6] Monaco Depo. p. 121
[7] Buchanan Depo, p. 183, ll. 10-24

recommendations to be presented to the Board of Supervisors.

In 2013, Plaintiff was informed by Andrew that she was "being removed from the classroom for the Spring 2014 semester while issues," related to multiple serious concerns brought to his attention, were being investigated by the Human Resources Department.[8] Among the concerns were Plaintiff's "use of profanity to 'get the attention of students' and 'loosen them up'" as part of her pedagogical approach. Further Andrew advised that "receiving bans from multiple school districts as a result of inappropriate behavior" did not support her claim to the legitimacy of her behavior.[9] During the investigation, Plaintiff again "admitted to using profanity and language of a sexual nature" which she claimed "supported her "overall pedagogical strategy when teaching at LSU."[10]

On January 15, 2014, Plaintiff "met with LSU Human Resource Management administrators, including Defendant Gaston Reinoso, to discuss the allegations"[11] of complaints of students and school administrators about Plaintiff's "use of sexual terms in the classroom, profanity, and belittling and embarrassing statements" and use of "vulgarities" in a meeting at an elementary school.[12] Plaintiff "explained that she used language referenced in the complaints for pedagogical purposes."[13]

On May 26, 2014, Plaintiff "received a memorandum from Defendant Reinoso finding her '**actions and behavior**' to be 'inappropriate, unwelcome and a direct violation of the University's Policy Statements on Sexual Harassment, PS-73 and PS-95'"[14] and in violation of "the Americans with Disabilities Act ("ADA") by disclosing a student's medical condition to the student's entire class."[15] Director Reinoso's memorandum "stated: 'Beyond your sexual oriented comments, your reported communication style with students, faculty,

---

[8] Buchanan Depo. p. 200, ll. 1-25 and p. 201, ll. 1-12 and Exhibit 7
[9] Buchanan Depo., Exhibit 8
[10] Buchanan Depo., p. 212, ll2-9
[11] Doc. 1, ¶20
[12] Doc. 1, ¶19
[13] Doc. 1, ¶20
[14] Doc. 1, ¶22 (Emphasis added.); Reinoso Depo., pp. 273-274
[15] Doc. 1, ¶29

and outside administrators has been found to be inappropriate.'"[16] Director "Reinoso's identification of charges and specific harassment policies . . . led to a June 12, 2014 meeting between" Plaintiff and Damon Andrew, Dean of the College of Human Sciences & Education.[17] Reinoso testified that his role was to look at Plaintiff's behavior and determine whether or not she violated policy[18] and stated he doesn't "deal with terminations"[19] and did not recommendation "that Dr. Buchanan be dismissed" because he didn't "have the power to recommend termination."[20]

At the meeting, Plaintiff admitted to the Dean that she used profanity and sexual referenced which she claimed were part of her pedagogy. On June 17, 2014, Dean Andrew notified Plaintiff he "was 'considering pursuing' dismissal for cause proceedings . . . under LSU policy PS-104."[21] "Plaintiff was informed of" Dean Andrew's recommendation to Provost Stuart Bell on July 14, 2014.[22] On July 30, 2014, Provost Bell requested a PS-104 proceeding.[23] Plaintiff "wrote to Bell on August 3, 2014, to ... explain how her complained of speech was part of her pedagogical strategy".[24] In accordance with PS-104[25], Provost Bell impaneled a faculty committee to conduct an evidentiary hearing to determine whether Plaintiff violated LSU's policies and/or federal law. Plaintiff was notified of her right and exercised her right to object to the individuals nominated to serve on the faculty committee.[26]

Plaintiff was notified of and "attended two prehearing meetings" in which she and her legal counsel participated.[27] On March 9, 2015, the faculty committee "conducted a twelve-hour hearing"[28] during which "[t]he committee heard testimony on the allegations . . . including" Plaintiff's use of "profanity with student

---

[16] Doc. 1, ¶29
[17] Doc. 1, ¶30
[18] Reinoso Depo., p. 2-5
[19] Reinoso Depo., p. 116, ll. 3-4
[20] Reinoso Depo., p. 240, ll. 17-24
[21] Doc. 1, ¶31; Buchanan Depo., Ex. 8
[22] Doc. 1, ¶33
[23] Monaco Depo., p. 160 and Exhibit 130
[24] Doc. 1, ¶¶34 and 35
[25] Doc. 1-1, Exhibit B
[26] Buchanan Depo. p. 80, ll. 7-25, p. 81, 1-10
[27] Buchanan Depo, p. 81, ll 11-20
[28] Doc. 1, ¶37; Buchanan Depo. p. 198 10-11

teachers",[29] Plaintiff's use of "the word 'pussy'",[30] Plaintiff's remarks about "the impact of becoming pregnant" during the teacher training program,[31] Plaintiff's jokes about sex[32] and jokes about "stereotypical lesbian clothing."[33] Plaintiff participated in the PS-104 hearing in which she had "an opportunity to submit exhibits" and to submit a witness list.[34] The witnesses listed on Plaintiff's Witness list testified before the faculty committee except one witness Plaintiff released.[35]

On March 20, 2015, the faculty committee issued written findings confirming, Plaintiff's "conduct violated PS-73 and PS-95 . . . 'through her use of profanity, poorly worded jokes, and sometimes sexually explicit 'jokes'".[36] The faculty committee's findings were consistent with Reinoso's findings of the violations of LSU's policies.

On April 2, 2015, F. King Alexander, President and Chancellor of LSU, notified Plaintiff of his intent to recommend dismissal "for cause for violating LSU's policies and for violating the ADA."[37] Plaintiff appealed President Alexander's initial recommendation and requested the opportunity to address the Board of Supervisors. [38] Although President Alexander "declined to change his recommendation" Plaintiff's request to address the Board of Supervisors was granted.[39]

Plaintiff appeared before Board of Supervisors meeting where "they considered the chancellor's recommendation for … dismissal."[40] Prior to the Board of Supervisors' meeting, Plaintiff communicated with Board members via email and attached documents which she believed supported her position.[41]

Plaintiff recognizes, "LSU implemented a definition of harassment that mirrors the definition that

---

[29] Doc. 1, ¶37(a)
[30] Doc. 1, ¶37(b)
[31] Doc. 1, ¶37(c)
[32] Doc. 1, ¶37(d)
[33] Doc. 1, ¶37(e)
[34] Buchanan Depo. p. 195, ll. 9-18
[35] Buchanan Depo. p. 196, ll. 7-20
[36] Doc. 1, ¶38; Alexander Depo., pp. 63-64 and Exhibit 38
[37] Doc. 1, ¶39; Alexander Depo. p. 127, Exhibit 150
[38] Buchanan Depo. p. 176, ll. 2-7
[39] Buchanan Depo, p. 176, ll8-10
[40] Buchanan Depo., p. 29, l. 25- p. 30, ll. 1-5
[41] Buchanan Depo., p. 30, ll. 6-23

has been proposed by the U.S. Departments of Education and Justice in what they have called 'a blueprint for colleges and universities throughout the country to protect students from sexual harassment'" by defining sexual harassment as "any unwelcome conduct of a sexual nature."[42] Plaintiff acknowledges LSU policy PS-73 defines harassment as:

> **speech and/or conduct of a sexually discriminatory nature**, which was neither welcomed nor encouraged, which would be so **offensive to a reasonable person as to create an abusive** working or **learning environment and/or impair his/her performance** on the job or **in the classroom**.[43]

Plaintiff further acknowledges:

> LSU's policy on sexual harassment of students, PS-95, defines sexual harassment as '**unwelcome verbal** . . . **behavior of a sexual nature** . . . **which** '**has the** purpose or **effect of unreasonably interfering with an individual's academic work**, team or organization performance **or creating an intimidating, hostile or offensive working environment**.[44]

Additionally, Plaintiff acknowledges PS-95 "lists examples of hostile environment harassment, including ... **offensive language** ... **of an intimidating or demeaning nature**."[45]

### B. Procedural Background

On January 20, 2016, Plaintiff sued Dean Andrew, Director Reinoso, Associate Vice-Chancellor Monaco and President Alexander seeking declaratory, injunctive and monetary relief arising from her June 19, 2015 dismissal by the Board of Supervisors. On March 29, 2016, Defendants answered the Complaint asserting sovereign immunity, failure to state a claim for which relief can be granted, qualified immunity and lack of standing.[46] On February 10, 2017, Defendants filed a Motion for Rule 12(c) Judgment on the Pleadings (Doc. 26) which is still pending urging this Court to enter Judgment on the Pleadings dismissing the Complaint for the reasons set forth in their Memorandum in Support of Motion for Rule 12(c) Judgment

---

[42] Doc. 1, ¶28
[43] Doc. 1, ¶23 (Emphasis added.)
[44] Doc. 1, ¶24 (Emphasis added.)
[45] Doc. 1, ¶25 (Emphasis added.)
[46] Doc. 14

on the Pleadings (Doc. 26-1).

## II.    LAW AND ARGUMENT

### A.   Summary Judgment is appropriate when there are no genuinely disputed material facts.

Fed. R. Civ. P. 56 provides, summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[47] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"; a fact is "material" if it "might affect the outcome of the suit under the governing law."[48]

While the moving party bears the initial burden of identifying those materials in the record that it believes demonstrate the absence of a genuinely disputed material fact, it is not required to negate elements of the nonmoving party's case.[49]   If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"[50]   "Conclusory allegations unsupported by specific facts ... will not prevent the award of summary judgment; the plaintiff [can]not rest on his allegations ... to get to a jury without any "significant probative evidence tending to support the complaint."[51]

### B. Damage claims against Defendants in their official capacities are unreasonable.

#### 1. Sovereign Immunity bars damage claims against state officials.

Sovereign immunity granted by the Eleventh Amendment operates as "a jurisdictional bar, depriving federal courts of the power to adjudicate suits against a state." *Union Pacific Railroad Co. v. La. Public Service Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011). A suit "against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v.*

---

[47] *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015).
[48] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Ray v. United Parcel Serv.,* 587 Fed.Appx. 182, 186 (5th Cir. 2014).
[49] *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Capitol Indem. Corp. v. United States,* 452 F.3d 428, 430 (5th Cir. 2006).
[50] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–587 (1986) (internal citations omitted).
[51] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.,* 40 F.3d 698, 713 (5th Cir. 1994).

*Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Sovereign immunity extends to state officials sued in official capacities because such suits are actually against the state. *New Orleans Towing Ass'n, Inc. v. Foster*, 248 F.3d 1143 (5th Cir. 2001).

Plaintiff does not dispute the Defendants are LSU officials and state employees. "Several federal courts have unwaveringly determined that Louisiana's public universities, including LSU, are to be treated as arms of the State of Louisiana." *Jarvis v. Louisiana State Univ. Health Science Ctr.*, 2007 WL 2993862, p. 3 (E.D. La. 2007). Since there is no factual dispute regarding Defendants' status as state officials, damage claims against these officials are unreasonable and must be dismissed.

### 2. State officials are not 'persons' subject to liability under 42 U.S.C. §1983.

Plaintiff does not dispute that the defendants are state employees. State employees and officials are not 'persons' subject to liability and cannot be sued for monetary damages under 42 U.S.C. §1983, *Perez v. Region 20 Education Service Center*, 307 F.3d 318, 326 (5th Cir. 2002). Identifying Defendants as state officials necessitates a dismissal of the 42 U.S.C. §1983 claims against Defendants in their official capacities. Longstanding jurisprudence on the applicability of sovereign immunity to state officials coupled with Plaintiff's awareness of Defendants' status, makes the 42 U.S.C. §1983 claims against Defendants clearly unfounded. Defendants, in their official capacities, are entitled to dismissal of the 42 U.S.C. §1983 claims.

### C. Defendants in their individual capacities are entitled to qualified immunity.

Even if, Plaintiff's actions, though in violation of LSU's policies and student's rights, are protected by the First Amendment, which is denied, Defendants are entitled to qualified immunity for reasonable actions to protect students and LSU which did not in violate a clearly established law. Defendants, in their personal capacities, are entitled to dismissal of the 42 U.S.C. §1983 claims with prejudice at Plaintiff's cost.

Defendants are entitled to qualified immunity for discretionary duties taken within the scope of their employment. *Wood v. Strickland*, 420 U.S. 308, 318 (1975). Qualified immunity protects public employees

and officials from individual capacity suits under 42 U.S.C. §1983 for performance of "discretionary duties" when their actions are reasonable regarding the rights allegedly violated. *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010). The Fifth Circuit uses a two-part test to evaluate qualified immunity defenses; first, whether the defendant's alleged actions violate Plaintiff's constitutional rights, and second "whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007).

Courts may render judgment on an official's qualified immunity where the law was not clearly established at the time of the alleged violation without determining whether a constitutional right was violated. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). A "clearly established" law must so clearly and unambiguously prohibit an official's conduct that "every reasonable official would have understood that what he is doing violates that right" and existing precedent placed the question beyond debate. *Ashcroft v. Al-Kidd,* 563 U.S. 731, 741 (2011).

### 1.   Plaintiff cannot prove that actions consistent with federal policies are unreasonable.

Not only does Plaintiff fail to allege facts demonstrating that Defendants violated a "clearly established" law, she acknowledges they followed the affirmative guidance of the federal government. In *Waters v. Churchill*, 511 U.S. 661, 668 (1994), the Supreme Court held the employer did not violate the First Amendment because it reasonably believed the employee's speech was unprotected. Here, Defendants reasonably believed Plaintiff's speech in violation of LSU's policies was unprotected. Further, clearly established law informed the Defendants that disciplinary action could be imposed for violations of harassment policies.[52]  *Harris v. City of Hammond*, 2008 WL 4469112 (E.D. La. 2008) citing *Paul v. Davis*, 424 U.S. 693, 712 (1976).

Plaintiff concedes LSU's policies "mirror a 'blueprint' for campus anti-harassment policies

---

[52] In fact, this further reflects on the reasonableness of the response to the complaint against Plaintiff.  LSU implemented policies based on directives from the federal regulatory agencies enforcement powers.

promulgated by the U.S. Departments of Education and Justice."[53] As the Complaint recognizes, guidelines established by these federal agencies apply to Plaintiff's speech in the classroom. It's absurd for Plaintiff to claim that Defendants' recommendations to enforce policies consistent with federal guidelines are unreasonable. Defendants' efforts to protect students and to avoid liability by recommending following the advice of two federal agencies, is reasonable per se and cannot form the basis of liability. Defendants are clearly entitled to dismissal of Plaintiff's claims against them individually with prejudice at Plaintiff's cost.

### 2. Plaintiff cannot establish Defendants were final decision makers.

Plaintiff does not dispute that Reinoso and Monaco were not decision-makers. Reinoso reported the findings of his investigation which Plaintiff alleges Monaco approved. Reinoso's findings were forwarded to Andrew. Andrew, merely recommended a due process hearing to Provost Bell. Provost Bell convened a faculty committee to determine whether Plaintiff violated LSU's policies and/or laws. Following a finding by the faculty committee, President Alexander recommended dismissal to the Board of Supervisors. As A.G. Monaco testified, "[w]ith tenured faculty, the board of supervisors grants tenure. So HR, the provost, the dean, they can't take that tenure away. It has to go back to the board of supervisors."[54]

Plaintiff concedes no Defendant dismissed her by unequivocally alleging that the Board of Supervisors dismissed her. Since no Defendant terminated Plaintiff's employment, Plaintiff's claims against the Defendants individually arising from the actions of the Board of Supervisors are unfounded and must be dismissed.

On June 22, 2015, three days after the Board of Supervisors terminated Plaintiff, the Fifth Circuit, in *Culbertson v. Lykos*, 790 F.3d 608 (5th Cir. 2015), dismissed a similar claim brought pursuant to 42 U.S.C. §1983 against an official who recommended dismissal.  Specifically, the Fifth Circuit concluded that at the time of the recommendation to terminate and on the date the opinion was written on June 25, 2015—

---

[53] Doc. 1, ¶1
[54] Monaco depo. p. 121, ll. 2-5

the law was unsettled as to "whether someone who is not a final decision-maker" can be liable under §1983 and therefore, the individual who recommended termination was entitled to qualified immunity. *Id* at 627. The *Culbertson* court cited several prior cases, including *Beattie v. Madison County School Dist.*, 254 F.3d 595, 604-605 (5th Cir. 2001), holding *only* the ultimate decision-maker can be liable under §1983 for termination.

The plaintiff in *Beattie* claimed she was fired for opposing the superintendent's reelection and for expressing her opinion regarding the superintendent after being requested not to by the principal. The principal recommended Beattie's removal to the superintendent on the basis of complaints regarding *Beattie's* behavior with parents, teachers, and students. The superintendent then recommended termination to the school board. The Court held, regardless of their motives, the principal and superintendent were not liable under §1983 where the school board was the ultimate decision-maker.

### 3. Plaintiff cannot prove Defendants did not perform discretionary duties in a reasonable manner.

Even if Plaintiff's behavior was protected by the First Amendment and/or Fourteenth Amendment and her rights were violated, which is denied, Defendants did not violate "a clearly established constitutional right of which all reasonable college administrators and staff should have known, rendering [them] liable under 42 U.S.C. §1983."[55]

### a. Plaintiff cannot prove Dean Andrew violated a clearly established constitutional right.

The only material facts alleged regarding Dean Andrew in the Complaint are providing information to Provost Bell, discussing the HR report with Plaintiff and recommending a due process hearing before a faculty committee. Plaintiff's acknowledgement that Dean Andrew did not dismiss her makes her allegations clearly insufficient to state a 42 U.S.C. §1983 against Dean Andrew, in his personal or official capacity; therefore, all claims against him must be dismissed with prejudice at Plaintiff's cost.

---

[55] Doc. 1, ¶¶54 and 65.

Plaintiff's *conclusion* that Dean Andrew violated "a clearly established constitutional right of which all reasonable college administrators and staff should have known, rendering him liable under 42 U.S.C. §1983"[56] is not supported by any factual allegations. The factual allegations demonstrate the reasonableness of Dean Andrew's actions as follows:

1. "On December 20, 2013 . . . **notified**" **Plaintiff** "she would not be teaching in the spring semester due to complaints from students about . . . 'inappropriate comments' she allegedly made during instruction, and because a superintendent of schools for a parish where LSU placed student teachers had complained" of 'negative and inappropriate comments'."[57]

2. **Notified Plaintiff his action** regarding her promotion "**would be referred to the Provost**."[58]

3. On December 23, 2013, "informed LSU Executive Vice Chancellor and Provost Stuart Bell that he was **rescinding his recommendation**" that Plaintiff "be promoted to full professor." [59]

4. "[t]old Bell that an unidentified **student had complained regarding Professor Buchanan's** . . . '**use of sexual terms in the classroom, profanity, and belittling and embarrassing statements**" and "**further noted that a local parish superintendent had complained**" that **Plaintiff "use[d] vulgarities" during a meeting**.[60]

5. On June 12, 2014, **met with Plaintiff** regarding the charges identified in Reinoso's May 26, 2014 memorandum.[61]

6. On June 17, 2014, notified Plaintiff **"he was 'considering pursuing' dismissal for cause proceedings** against her **under LSU policy PS-104**."[62]

7. On July 14, 2014, "**recommended to Bell**" that Plaintiff "be dismissed for cause."

8. "Cited Plaintiff's speech as the basis for his recommendation."[63]

9. "[E]lected to await the conclusion of the . . . Office of Human Resource Management investigation before turning to LSU's PS-104 procedure, which calls for the administration to demonstrate adequate cause in a hearing of record before a body of faculty peers."[64]

---

[56] *Id*
[57] Doc. 1, ¶16 [Emphasis added.]
[58] Doc. 1, ¶17 [Emphasis added.]
[59] Doc. 1, ¶18 [Emphasis added.]
[60] Doc. 1, ¶19 [Emphasis added.]
[61] Doc. 1, ¶30 [Emphasis added.]
[62] Doc. 1, ¶31 [Emphasis added.]
[63] Doc. 1, ¶51
[64] Doc. 1, ¶62

**b.   Plaintiff cannot prove Director Reinoso violated a clearly established right.**

The following allegations regarding Director Reinoso likewise demonstrate the reasonableness of his actions:

1. On January 15, 2014, **met with Plaintiff** and LSU Human Resource ("HR") staff **"to discuss the allegations" of the complaints regarding her behavior**.[65]

2. **Sent a memorandum** which Plaintiff received on May 26, 2014 "notifying her, her 'actions and behavior' were inappropriate, unwelcome and a direct violation of the University's Policy Statements on Sexual Harassment, PS-73 and PS-95"[66] and determining she "had violated the Americans with Disabilities Act ("ADA") by disclosing a student's medical condition to the student's entire class."[67]

3. "[C]ited Plaintiff's speech as the basis for finding that she violated LSU's sexual harassment policies."[68]

4. "**[C]onducted an investigation** regarding whether" Plaintiff "could be found in violation of LSU sexual harassment policies"[69]

Plaintiff's own allegations demonstrate that Reinoso's actions were not unreasonable or in violation of a "clearly established" constitutional right. The allegations are likewise, insufficient to state a claim pursuant to 42 U.S.C. §1983 against Director Reinoso, in his personal or official capacity, requiring dismissal with prejudice at Plaintiff's cost.

**c. Plaintiff cannot prove Vice Chancellor Monaco violated a clearly established right.**

Plaintiff's *conclusion* that Vice-Chancellor Monaco violated "a clearly established constitutional right of which all reasonable college administrators and staff should have known, rendering him liable under 42 U.S.C. §1983"[70] is clearly not supported by any factual allegations. The scant allegations regarding Vice-Chancellor Monaco are:

---

[65] Doc. 1, ¶20 [Emphasis added.]
[66] Doc. 1, ¶22 [Emphasis added.]
[67] Doc. 1, ¶29 [Emphasis added.]
[68] Doc. 1, ¶53
[69] Doc. 1, ¶61 [Emphasis added.]
[70] Doc. 1, ¶ ¶54 and 65.

1. **Approving "Reinoso's findings** that Plaintiff's speech violated LSU's sexual harassment policies."[71]

2. **Conducting "an investigation** regarding whether Professor Buchanan could be found in violation of LSU's sexual harassment policies instead of proceeding from the outset in accordance with LSU's applicable PS-104, Dismissal for Cause for Faculty policy."[72]

3. Not informing Plaintiff "of which LSU policy was violated."[73]

Plaintiff's own allegations demonstrate that Monaco's actions were not unreasonable or in violation of a "clearly established" constitutional right. They are likewise clearly insufficient to state a claim pursuant to 42 U.S.C. §1983 against Associate Vice-Chancellor Monaco, in his personal or official capacity; therefore, all claims against him should be dismissed with prejudice at Plaintiff's cost.

### d. Plaintiff cannot prove President Alexander violated a clearly established right.

Again, Plaintiff's *conclusion* that President Alexander violated "a clearly established constitutional right of which all reasonable college administrators and staff should have known, rendering him liable under 42 U.S.C. §1983"[74] is clearly not supported by her *allegations*. The only facts alleged regarding President Alexander are:

1. "[O]n April 2, 2015, **recommended to the Board of Supervisors** that" Plaintiff "be dismissed for cause for violating LSU's sexual harassment policies and for violating the ADA."[75]

2. "**[D]enied" Plaintiff's "appeal** and declined to change his recommendation that she be dismissed for cause."[76]

3. "[C]ited Plaintiff's speech in explaining his decision to recommend dismissal for cause to the Board of Supervisors."[77]

4. "[E]lected to await the conclusion of the . . . Office of Human Resource Management investigation before turning to LSU's PS-104 procedure, which calls for the administration to demonstrate adequate cause in a hearing of record before a body of faculty peers."[78]

---

[71] Doc. 1, ¶28 [Emphasis added.]
[72] Doc. 1, ¶ 61 [Emphasis added.]
[73] Doc. 1, ¶29
[74] Doc. 1, ¶¶54 and 65.
[75] Doc. 1, ¶39 [Emphasis added.]
[76] Doc. 1, ¶40 [Emphasis added.]
[77] Doc. 1, ¶50
[78] Doc. 1, ¶62

Additionally, Plaintiff alleges after her termination President Alexander "explained" to the press "the University's need to follow its Title IX policies to avoid subjecting the University "to loss of federal funds" and "liability for money damages under Title IX or The Civil Rights Act."[79]

Again, nothing in the Plaintiff's factual allegations demonstrates that President Alexander acted unreasonably or in violation of a "clearly established" constitutional right.  President Alexander also did not terminate Plaintiff's employment. Any statements made after Plaintiff's termination cannot form the basis of any claim asserted by Plaintiff in her Complaint. Accordingly, the allegations concerning President Alexander are clearly insufficient to state a claim against him, in his personal or official capacity, requiring dismissal of all claims against him with prejudice at Plaintiff's cost.

### D.   Plaintiff cannot prove her Speech was not protected by the First Amendment.

While the First Amendment may grant Plaintiff the right to say certain things as a citizen, it does not immunize her from the repercussions of her speech while performing duties for LSU.  In general, the First Amendment does not protect speech made in an employment capacity, the analysis focuses on the role of the speaker rather than the content of the speech. *Garcetti v. Ceballos,* 547 U.S. 410, 421–22 (2006). Key factors identified by the *Garcetti* Court include: the location where the speech is made, a comparison of the subject matter of the speech and the employment, and whether the speech is made pursuant to the plaintiff's job duties. *Id.* at 421. In *Williams v. Dallas Independent School District,* 480 F.3d 689, 693 (5th Cir. 2007), the Fifth Circuit clarified that a public employee is not protected by the First Amendment if the speech is not necessarily required by job duties but is nonetheless related to job duties or the speech is made in the course of performing job duties. In *Davis v. McKinney,* 518 F.3d 304, 313 (5th Cir. 2008), the Court recognized that speech shared to persons outside the workplace, is more likely to enjoy First Amendment protection.

Plaintiff's was not terminated for behavior or speech outside her workplace.  "When public

---

[79] Doc. 1, ¶42

employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti* at 421; *Caleb v. Grier*, 598 Fed.Appx. 227, 233 (5th Cir. 2015). To establish a constitutional claim under the First Amendment, four elements must be pled: (1) an adverse employment decision; (2) speech involving a matter of public concern; (3) plaintiff's interest in commenting on matters of public concern outweighs the defendant's interest in promoting efficiency; and (4) speech was the motivating factor in defendant's decision, *Beattie* at 601 (5th Cir. 2001). The Court should first determine whether the plaintiff spoke "as a citizen on a matter of public concern." In *Connick v. Myers.* 461 U.S. 138, 1433 (1983), the Court held, if the employee has not engaged in "speech on a matter of public concern, it is unnecessary . . . to scrutinize the reasons for her discharge."

When a public employee engages in an activity required by the position or undertaken in the course of performing a job, the speech is within the purview of "official duties." *Williams v. Dallas Independent School District,* 480 F. 3d 689, 693 (5th Cir. 2007) (per curiam). "The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties." *Hayes v. LaForge*, 113 F.Supp.3d 883 (N.D. Miss. 2015). "The inquiry is a 'practical one,' and the controlling factor is whether the plaintiff's expressions were made pursuant to one of the numerous duties for which the plaintiff was employed." *Elizondo v. Parks*, 431 Fed.Appx. 299, 303 (5th Cir. 2011) (per curiam). "Even if the speech was of great social importance, it is not protected by the First Amendment so long as it was made pursuant to the worker's official duties." *Williams*, 480 F.3d at 692.  The "focus [shifts] from the content of the speech to the role the speaker occupied when he said it.'" *Benes v. Puckett*, 602 Fed.Appx. 589, 593 (5th Cir. 2015) (per curiam).

In *Cutler v. Stephen F. Austin University*, 767 F.3d 462 (5th Cir. 2014), the Fifth Circuit explained the ruling in *Waters v. Churchill*, 511 U.S. 661, 668 (1994) as instructing:

lower courts to take a deferential approach: when an employer's decision rests on a

reasonable belief about the contents of the employee's speech, formed after an objectively reasonable investigation of the facts to determine what the employee actually said, then <u>the court should not second-guess the employer's decision even if the employer was wrong and the speech was entitled to protection</u>.

Plaintiff did not deny the speech complained of. Additionally, she acknowledges the speech occurred while performing her official duties. In fact, Plaintiff defended her speech made while teaching courses as being part of her "pedagogy." Regardless, she acknowledges the speech at issue was within the scope of her duties as a member of the LSU faculty and has not alleged she was acting as a citizen or speaking on a matter of public concern.  The Complaint clearly demonstrates a lack of First Amendment protection for the speech at issue. Defendants are entitled to qualified immunity and dismissal of the First Amendment claims against them individually with prejudice at Plaintiff's cost.

### E.  Plaintiff cannot prove she was denied due process.

Plaintiff acknowledged she was notified of the allegations, participated in pretrial meetings, afforded an evidentiary hearing before faculty members and permitted to appeal the recommendations made during the process. Plaintiff further acknowledges, the faculty committee's report, which formed the basis of the recommendation to the Board of Supervisors, found her "conduct violated PS-73 and PS-95 . . . 'through her use of profanity, poorly worded jokes, and sometimes sexually explicit 'jokes.'"

The faculty committee hearing satisfied the Fourteenth Amendment's due process requirements necessary to dismiss Plaintiff. Further, the Complaint is void of any factual allegations supporting Plaintiff's conclusion of denial of due process. For the foregoing reasons, Plaintiff's claims for violation of the Fourteenth Amendment must be dismissed with prejudice at Plaintiff's cost.

### F.  Plaintiff cannot prove Defendants can provide the declaratory and injunctive relief Plaintiff seeks.

The Complaint makes it clear that Defendants, acting in their official or personal capacities, lacked authority to terminate Defendant and, in fact, did not do so.  Defendants likewise lack authority in their official and personal capacities to overturn the decision of the Board of Supervisors or to reinstate Plaintiff.

Defendants are entitled to dismissal of Plaintiff's claims for injunctive and declaratory relief against them in their personal and official capacities, with prejudice at Plaintiff's cost.

### G. Plaintiff cannot prove she has standing to assert claims on behalf of LSU's students and faculty.

While Plaintiff seeks a judgment "declaring LSU's sexual harassment policies unconstitutional" pursuant to 28 U.S.C. §2201 and Fed. R. Civ. P. 57[80] and "a permanent injunction prohibiting the Defendants from enforcing their restrictions on LSU faculty and students' expressive activities to the extent they are unconstitutional"[81] pursuant to 28 U.S.C. §2202 and Fed. R. Civ. P. 65 (Count IV), the Complaint contains absolutely no facts demonstrating standing to bring any claim on behalf of LSU's faculty or students. Defendants are entitled to dismissal of Plaintiff's claims for injunctive and declaratory relief sought on behalf of LSU faculty and students with prejudice at Plaintiff's cost.

### H. Plaintiff cannot prove her claims are not time-barred.

Alternatively, and only in the event this Honorable Court finds the Complaint states any claim upon which relief can be granted and which Plaintiff has standing to assert, such claim against Dean Andrew, Director Reinoso and Associate Vice-Chancellor Monaco, is time-barred. The statute of limitations for claims under 42 U.S.C. §1983 is one year. Violations of First Amendment rights are almost always actionable since they almost always constitute discrete acts which cannot be aggregated for a "continuing violation" argument. *Van Heerden v. Board of Sup'rs of Louisiana State Univ.*, 2011 WL 5008410, p. 8 (M.D. La. 2011) citing *O'Connor v. City of Newark*, 440 F.3d 125 (3d Cir. 2006) (disallowing aggregation of discrete acts to extend the statute of limitations for a §1983 First Amendment claim). In V*an Heerden*, the Court explained that each alleged violation of First Amendment rights constitutes a discrete act which cannot be aggregated. Each factual allegation regarding Dean Andrew, Director Reinoso and Vice-Chancellor Monaco was a discrete act which occurred prior to the March 9, 2015 faculty committee hearing

---

[80] Doc. 1, ¶79
[81] Doc. 1, ¶80

and more than a year before the Complaint was filed.

      **1.    All claims against Dean Andrew are time-barred.**

The Complaint, filed on January 20, 2016, includes no allegation concerning Dean Andrew occurring after July 14, 2014 where it is alleged, "Andrew recommended to Bell that Professor Buchanan be dismissed for cause."[82] Plaintiff admits she was aware of Andrew's "decision ten days later"[83] and that she "wrote to Bell on August 3, 2014, to reiterate her due process concerns and explain how her complained-of speech was part of her pedagogical strategy."[84] Dean Andrew's recommendation to Provost Bell made 18 months prior to the filing of the this suit, was a discrete act resulting in Provost Bell initiating a faculty committee to determine whether Plaintiff violated LSU's policies and/or federal laws. Any claims against Andrew are time-barred and therefore, must be dismissed with prejudice at Plaintiff's cost.

      **2.    All claims against Director Reinoso and Vice-Chancellor Monaco are time-barred.**

The Complaint filed on January 20, 2016, includes no allegations regarding Monaco or Reinoso after May 26, 2014. Plaintiff alleges Monaco and Reinoso conducted an investigation and Reinoso's May 26, 2014 findings were approved by Monaco.[85] According to Plaintiff, Reinoso's report stated, "Plaintiff's speech violated LSU's sexual harassment policies."[86] The only other factual allegation regarding Director Reinoso is his sending Plaintiff a memorandum she received on May 26, 2014, "finding her 'actions and behavior' to be inappropriate" and in violation of the ADA. Director Reinoso's report was sent to Plaintiff more than 19 months before suit was filed. Accordingly, any claims against Director Reinoso and Associate Vice-Chancellor Monaco are time-barred and must be dismissed with prejudice at Plaintiff's cost.

---

[82] Doc. 1, ¶33
[83] Doc. 1, ¶33
[84] Doc. 1, ¶34
[85] Doc. 1, ¶28
[86] Doc. 1, 30

III.    CONCLUSION

Plaintiff cannot prove Defendants are liable for the actions of the Board of Supervisors. Plaintiff cannot prove her First Amendment or Fourteenth Amendment rights were violated and therefore, has no claim pursuant to 42 U.S.C. §1983 arising out of her dismissal by the Board of Supervisors against the named Defendants. Further, Plaintiff cannot prove she has standing to assert claims pursuant to 28 U.S.C. §2201 or 28 U.S.C. §2202 arising out of her dismissal by the Board of Supervisors against the named Defendants. Plaintiff cannot establish any claim which is not barred by sovereign immunity or qualified immunity or is time-barred.

For the foregoing reasons, F. King Alexander, Damon Andrew, A.G. Monaco and Gaston Reinoso urge this Honorable Court to enter summary judgment pursuant to Fed. R. Civ. P. 56, dismissing Plaintiff's Complaint with prejudice at Plaintiff's cost and awarding a reasonable attorney's fee for the defense of any claims dismissed pursuant to this motion.

Respectfully submitted:

JEFF LANDRY
Attorney General

By:    /s/  Sheri M. Morris

Sheri M. Morris, LA Bar No. 20937
Carlton "Trey" Jones, III, LA Bar No. 25732
ROEDEL, PARSONS, KOCH, BLACHE,
     BALHOFF & McCOLLISTER
8440 Jefferson Highway, Suite 301
Baton Rouge, LA 70809
Phone: (225)929-7033  Fax: (225)928-4925
Emails: SMorris@RoedelParsons.com and
              CJones@RoedelParsons.com
*Special Assistant Attorneys General*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been served upon all counsel via the Court's electronic filing system on this 3rd  day of March 2017.

/s/   Sheri M. Morris