UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| TERESA BUCHANAN | CIVIL ACTION |
| VERSUS | |
| F. KING ALEXANDER,<br>DAMON ANDREW, A.G. MONACO AND<br>GASTON REINOSO | NUMBER: 3:16-cv-00041-SDD-EWD |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

  F. King Alexander, Damon Andrew, A.G. Monaco and Gaston Reinoso (collectively "Defendants"), in their personal and official capacities, submit this Supplemental Memorandum in Support of Defendants' Motion for Summary Judgment to present additional evidence Exhibit G through L in support of the arguments II(C)(3), (D) and (E) made in the Memorandum in Support of Defendants' Motion for Summary Judgment (Doc. 30) urging this Court to enter a summary judgment dismissing the Complaint (Doc. 1) of Teresa Buchanan ("Plaintiff") with prejudice at Plaintiff's cost including reasonable attorney fees on the following grounds: 1) the Eleventh Amendment grants state officials sovereign immunity; 2) state officials are not persons as defined by 42 U.S.C. §1983; 3) Defendants, in their personal capacities, are entitled to qualified immunity; 4) Plaintiff lacks standing to assert claims on behalf of LSU students and/or faculty; 5) Plaintiff's speech is not protected by the First Amendment; 6) an evidentiary hearing before a faculty committee complies with the Fourteenth Amendment's due process requirements for termination of a tenured employee; 7) Defendants in their personal capacities lack authority to grant the declaratory or injunctive relief Plaintiff seeks; and 8) the Complaint fails to state any claim upon which

relief can be granted by Defendants.

Alternatively, and only in the event this Honorable Court determines Plaintiff has standing and has asserted any claim for relief not barred by the Eleventh Amendment or by qualified immunity, then Damon Andrew, A.G. Monaco and Gaston Reinoso, in their personal and official capacities, are entitled to summary judgment dismissing the claims against them which are time-barred with prejudice at Plaintiff's cost including reasonable attorney fees.

Claims barred by sovereign immunity, qualified immunity or time-barred or brought by an individual who lacks standing are without foundation and unreasonable entitling Defendants to recover reasonable attorney fees pursuant to 42 U.S.C. §1988(b) for the defense of any dismissed claim.

## II.   SUPPLEMENTAL LAW AND ARGUMENT

## C.   Defendants in their individual capacities are entitled to qualified immunity.

### 3.   Plaintiff cannot prove defendants did not perform discretionary duties in a reasonable manner.

Interim Associate Dean Jennifer Curry testified that two of Dr. Buchanan's students requested to meet with her to discuss complaints regarding Dr. Buchanan's behavior in the classroom. Student 1 complained that she was offended by Dr. Buchanan's comments about sexual relationships directed toward Student 1's relationship with her fiancé. Student 1 stated she was humiliated by Dr. Buchanan's inferences about Student 1's relationship made in front of her classmates. Student 1 told Dr. Curry,

> Dr. Buchanan had offered them condoms, had told them it was unacceptable to become pregnant. And that if you chose to become a mother, that your grades would suffer for that. She told them … enjoy the sex while the sex is – good.

> If you're dating – if you're dating, make sure the sex is good, something along those lines.[1]

Student 1 was particularly offended when Dr. Buchanan responded to Student 1's comment that her fiancée was very supported by saying "yeah, he's supportive now while the sex is good, but just wait until you're married for five years." Dr. Curry testified that Student 1 said, "I don't know who she is to make these assumptions about me, and to say it in front of a room full of people."[2]

Additionally, Student 1 reported that "Dr. Buchanan had recorded a student crying during one of these assessment team meetings. And had played it back for the student."[3] Student 2 complained that Dr. Buchanan had intimidated and demeaned her by video recording her during an assessment team meeting. Student 2 told Dr. Curry:

> during her assessment team meeting, she began to cry. She said that Dr. Buchanan was yelling at her. And that when she started to cry, Dr. Buchanan got out her cell phone and did not ask her, but started to record her crying and then played it back for her, she said, look at yourself, look at yourself, you need to check yourself in somewhere and get help, get a break.[4]

Dr. Curry testified that Student 2 told her "multiple thing about that meeting, she said it was mortifying."[5] Student 2 reported to Dr. Curry that:

> Terry was extremely aggressive during this assessment team meeting. She said every time she tried to talk, Terry would say, shut up, you're not listening, be quiet, be quiet, like screaming at her, very aggressive. She said it was more than intimidating. Like she felt attacked, fearful.[6]

Dr. Curry testified that she reported the student complaints to Dean Andrew who requested a meeting with Dr. Cheek, Director of the College of Education, regarding the

---

[1] Curry Depo., p. 69, ll. 3-10, (Exhibit G)
[2] Curry Depo., p. 71, ll. 21-24
[3] Curry Depo., p. 69, ll. 14-16
[4] Curry Depo., p. 70, ll. 11-22
[5] Curry Depo., p. 70, ll. 22-23
[6] Curry Depo., p. 72, ll. 6-12

complaints. Dr. Cheek advised that 10-12 students came to his office with similar complaints about Dr. Buchanan's behavior and her "talking about sex."[7]

Additionally, Dr. Cheek indicated that school administrators had requested that Dr. Buchanan not mentor students on their campuses. Dr. Cheek advised that he related the complaints to former Dean Lindsay and to Human Resources but was told that nothing could be done since Dr. Buchanan was tenured.[8] Dean Andrew requested Dr. Curry to gather any available information regarding prior complaints. While gathering information concerning complaints, Dr. Curry was contacted by Dr. Cancienne, Superintendent for Iberville Parish Schools who advised that Dr. Buchanan was no longer authorized to be on any school campus in Iberville Parish.[9]

After gathering additional evidence, Dr. Curry and Dean Andrew sought assistance from Human Resources to determine what to do about the complaints and information gathered regarding Dr. Buchanan.[10] Gaston Reinoso interviewed witnesses and reported his findings to Dean Andrew. Dean Andrew recommended to Provost Bell appointment of a PS-104 faculty committee. The PS-104 committee conducted a 12 hour hearing. During the 12 hour hearing numerous witnesses testified regarding Dr. Buchanan's classroom behavior including Dr. Buchanan's friend Karen Donnelly.

During her deposition, Ms. Donnelly, an adjunct instructor in the PK-3 Program reported her concerns to Dr. Cheek about Dr. Buchanan's behavior in Zachary Community School System. During her deposition, Ms. Donnelly confirmed that she reported Dr. Buchanan's behavior to the Director of the College of Education, Dr.

---

[7] Curry Depo, p. 80, ll. 5-15
[8] Curry Depo, p. 81, ll. 10-14
[9] Curry Depo., p. 100, ll. 7-21
[10] Curry Depo., p. 148, ll. 2-12

Cheek, because Dr. Buchanan's behavior "was threatening our program, and Zachary is our best placement."[11] Ms. Donnelly further explained that Zachary is "the number one school district in the state, and they have been ever since they became a school district, and they're developmentally appropriate in the early grade where we have our students."[12] Ms. Donnelly stated that Zachary schools were a preferred placement and in fact at one point, all of the student teachers were placed in Zachary Schools.[13]

Ms. Donnelly confirmed in her deposition that she observed Dr. Buchanan use profanity in the classroom[14] and heard remarks the students complained about. Ms. Donnelly also confirmed complaints regarding Dr. Buchanan from four elementary school officials resulting in Dr. Buchanan not mentoring students in more than four different schools. Ms. Donnelly acknowledged that the Zachary Community School System ("Zachary") requested that Dr. Buchanan not mentor students in Zachary schools,[15] Dr. Buchanan told her the LSU Lab School complained about Dr. Buchanan's behavior,[16] and Dr. Cheek questioned her about a complaint from the West Baton Rouge Parish School System about an incident at Port Allen Elementary where Dr. Buchanan offended the secretary.[17] In response to the complaint Dr. Cheek decided "to not have Dr. Buchanan return to Port Allen Elementary."[18] Ms. Donnelly also confirmed that the Superintendent of Iberville Parish Schools had complained about Dr. Buchanan's comments during an assessment team meeting.[19]

---

[11] Donnelly Depo. p. 74, ll. 4-7, (Exhibit H)
[12] Donnelly Depo. p. 74, ll. 8-14
[13] Donnelly Depo. p. 74, ll. 18-22
[14] Donnelly Depo. p. 64, ll. 16-18
[15] Donnelly Depo. p. 13, ll. 10-13
[16] Donnelly Depo. p. 14, ll. 1-10
[17] Donnelly Depo. p. 70, ll. 11-25 through p. 71, ll. 1-5
[18] Donnelly Depo. p. 71, ll. 6-13
[19] Donnelly Depo. p. 14, ll. 22-25 through p. 15, ll. 1-7

Ms. Donnelly confirmed that Mr. Reinoso accurately reported that "Dr. Buchanan typically makes comments" about the quality of sex because "that is how she is."[20] Ms. Donnelly further explained Dr. Buchanan, "doesn't have a filter. She just doesn't realize what sometimes she says, and how it sounds."[21] Ms. Donnelly admitted that Dr. Buchanan's statements could be offensive to the listeners.[22]

Ms. Donnelly confirmed that she was present when Dr. Buchanan spoke to her student about using condoms "so they wouldn't get pregnant" while in the program.[23] Additionally, Ms. Donnelly testified that she was present when Dr. Buchanan told a student in an assessment meeting "that the sex is good now, but just wait until later."[24] Ms. Donnelly stated that she believed Dr. Buchanan's behavior "has not gotten worse than it's always been."[25]

Dr. Cancienne, who was not interviewed by Gaston Reinoso or called to testify at the PS-104 hearing but was deposed by Dr. Buchanan's counsel, confirmed that he requested that Dr. Buchanan not return to Iberville Parish Schools. Dr. Cancienne testified he was concerned about the disruption her presence was having in the school."[26] Dr. Cancienne was advised that Dr. Buchanan's,

> statements and her inferences upset the faculty at the site so much so that the chief academic officer was very upset and said, you need to do something about this, superintendent. She is wrecking my school. She's bringing it down. She is hurting my culture. She's hurting our objectives."[27]

---

[20] Donnelly Depo. p. 63, ll. 4-8
[21] Donnelly Depo. p. 75, ll. 22-25 through p. 76, ll. 1-3
[22] Donnelly Depo. p. 76, ll. 4-6
[23] Donnelly Depo. p. 79, ll. 3-18
[24] Donnelly Depo. p. 41, ll. 22-25 through p. 42, ll. 1-7; p. 79, ll. 20-23
[25] Donnelly Depo. p. 80, ll. 20-23
[26] Cancienne Depo. p. 99, ll. 21-23, (Exhibit I)
[27] Cancienne Depo. p. 99, ll. 2-9

The actions of Dr. Buchanan reported to Dean Andrew clearly warranted investigation. The investigation report of Gaston Reinoso approved by A.G. Monaco was turned over to a PS-104 committee composed of faculty members who unanimously found that Dr. Buchanan violated LSU's harassment policies. Chancellor Alexander's recommendation of termination in order to protect students was clearly reasonable in light of the faculty committee's findings. Chancellor Alexander testified that his "primary concern is for the health and welfare of those students that are being subjected to that type of … classroom action and harassment and the concerns that they expressed to their Dean. And the colleagues that they expressed their concerns to their Dean."[28] Chancellor Alexander testified that he "felt that we had to do something to not – to ensure that those student do not end up in a classroom where the professor says that she will continue doing as she has done."[29]

Dr. Buchanan's behavior clearly offended numerous students. Additionally, Dr. Buchanan's behaviors rendered her unable to mentor student teachers in at least four school systems and put the PK-2 program in jeopardy of losing schools to place student-teachers. The only reasonable action for Dean Andrew, after the complaints of students and administrators were verified, was to request a PS-104 committee determine whether Dr. Buchanan's behaviors violated LSU's policies. Once the PS-104 committee determined that Dr. Buchanan's behaviors violated LSU's policies, it was incumbent upon Chancellor Alexander to take action to protect students.

**D.    Plaintiff cannot prove her speech was protected by the First Amendment.**

---

[28] Alexander Depo. p. 37, ll. 8-16, (Exhibit J)
[29] Alexander Depo. p. 37, ll. 23-25 – p. 38, ll. 1-2

Dr. Buchanan's job duties included teaching two courses every semester and also supervising student teachers in the Pre-Kindergarten through Third Grade Program.[30] The students' complaints were solely about Dr. Buchanan's behaviors while she was performing her teaching duties. The school administrators' complaints were solely about Dr. Buchanan's behaviors while mentoring LSU students who were doing student-teaching in elementary schools.

Plaintiff has cannot demonstrate that her comments outweigh LSU's interest in promoting efficiency in the PK-3 program. Accordingly, Dr. Buchanan's claims should be dismissed with prejudice.

**E.    Plaintiff cannot prove she was denied due process.**

The Chair of the PS-104 Committee testified that he followed the procedures outlined in the Provost's letter including, "organizing the proceeding, arranging a pre-hearing meeting to discuss the procedure and deadlines with the parties, as well as other related matters."[31] Dr. Buchanan confirmed that she received notices regarding pre-hearing meetings and participated in the hearing. Additionally, Dr. Buchanan testified that all witnesses she requested attended the hearing and testified and she was given the opportunity to cross examine the University Presenter's witnesses. Additionally, Dr. Buchanan's testimony confirms that she appealed to Chancellor Alexander and although her appeal was denied, she corresponded with members of the Board of Supervisors and provided them with materials she considered relevant.

Dr. Buchanan cannot show that she was not afforded due process sufficient to terminate her employment.

---

[30] Buchanan Depo. p. 37, ll. 3-6, (Exhibit K)
[31] Stickle Depo., p. 58, ll. 6-25 and Exhibit 24, (Exhibit L)

## CONCLUSION

Plaintiff cannot prove Defendants are liable for the actions of the Board of Supervisors. Plaintiff cannot prove her First Amendment or Fourteenth Amendment rights were violated and therefore, has no claim pursuant to 42 U.S.C. §1983 arising out of her dismissal by the Board of Supervisors against the named Defendants. Further, Plaintiff cannot prove she has standing to assert claims pursuant to 28 U.S.C. §2201 or 28 U.S.C. §2202 arising out of her dismissal by the Board of Supervisors against the named Defendants. Plaintiff cannot establish any claim which is not barred by sovereign immunity or qualified immunity or is time-barred.

For the foregoing reasons, F. King Alexander, Damon Andrew, A.G. Monaco and Gaston Reinoso urge this Honorable Court to enter summary judgment pursuant to Fed. R. Civ. P. 56, dismissing Plaintiff's Complaint with prejudice at Plaintiff's cost and awarding a reasonable attorney's fee for the defense of any claims dismissed pursuant to this motion.

Respectfully submitted:

JEFF LANDRY
Attorney General

By:   /s/  Sheri M. Morris
Sheri M. Morris, LA Bar No. 20937
Carlton "Trey" Jones, III, LA Bar No. 25732
ROEDEL, PARSONS, KOCH, BLACHE,
  BALHOFF & McCOLLISTER
8440 Jefferson Highway, Suite 301
Baton Rouge, LA 70809
Phone: (225)929-7033  Fax: (225)928-4925
Emails: SMorris@RoedelParsons.com and
       CJones@RoedelParsons.com
*Special Assistant Attorneys General*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been served upon all counsel via the Court's electronic filing system on this 7th day of April 2017.

/s/  Sheri M. Morris