**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **TERESA BUCHANAN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:16-cv-00041-SDD-EWD |
| | ) | |
| **F. KING ALEXANDER,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

**PLAINTIFF'S RESPONSE TO
SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Louisiana State University ("LSU") Defendants' "supplemental memorandum" is not so much a supplement to their summary judgment motion as it is a signed confession. Devoid of argument or supporting authority, the filing only cements the conclusion that the Defendants pursued Dr. Buchanan's termination for unconstitutional reasons that have nothing to do with sexual harassment.

In her consolidated motion for summary judgment and opposition to the Defendants' dispositive motions,[1] Plaintiff Dr. Teresa Buchanan showed that LSU applied a federal anti-harassment "blueprint" and poorly drafted policies that ignore First Amendment limits on regulating academic speech to fire her for "sexual harassment" based on speech that was unrelated to sex, gender, or harassment. Among other things, Plaintiff showed that Defendant LSU Human Resources Director and Executive Director of Equal Employment Opportunity Gaston

---

[1] Defendants' motion for leave to file a supplement (Dkt. 33) sought permission to have it bolster their summary judgment motion (Dkt. 30), but not their substantially identical motion for judgment on the pleadings. (Dkt. 26). This effectively concedes that the motion for judgment on the pleadings has, in fact, been converted and merged into the summary judgment motion under F.R.C.P. 12(d). *See also* Pl. Consol. Mem. 1 n.1 (Dkt. 35-1).

Reinoso investigated things Dr. Buchanan was alleged to have said while teaching at LSU, then merely recited them in a report devoid of any serious analysis that found her in violation of LSU's policies on sexual harassment.  Pl. Consol. Mem. 6-8, 20-22, 24-25.  The report did not specify what statement(s) Reinoso believed constituted sexual harassment; nor did it reveal that he actually found that most of the statements he set forth had no relation to sexual harassment or were uncorroborated.  *Id*.  Dr. Buchanan also showed that, at every stage of her termination proceedings, the Defendants relied primarily on allegations Reinoso (LSU's "expert") believed were irrelevant or unrelated to sexual harassment.  *Id*. 7-12, 21-25.  Only at his deposition did Reinoso admit that most of Dr. Buchanan's speech recounted in his report was ***not*** grounds for his sexual harassment findings.  *Id*. 7-8, 20-21, 24-25.

Now, in their Supplement (Dkt. 40), Defendants try their third bite at the apple, but the reasons they cite to justify Dr. Buchanan's termination are ones even their "expert" disavows. Def. Supp. 2-8.  Given these facts, it is far from clear how Defendants' counsel can represent in good faith that statements attributed to Dr. Buchanan supported a sexual harassment finding. After all, Defendants' counsel attended the Reinoso deposition and are fully aware that the statements they now highlight for the Court *could not* constitute sexual harassment and, in fact, *did not* play a role in his findings.[2]  Counsel offer no explanation for their insistence that it was "incumbent" on Defendants to secure Dr. Buchanan's termination, and that their actions were "clearly reasonable" and the "only reasonable action," Def. Supp. 7, based on allegations that:

- Dr. Buchanan recorded a student crying during an assessment team meeting, Def. Supp. 3 – but Reinoso testified the incident *had nothing to do with sexual harassment and played no role in his finding*.  Pl. SUMF ¶ 86 (citing Reinoso Tr. 69:18-24, 70:1-11, 200:4-8).

---

[2]  *See* Pl. SUMF ¶ 131.  Tellingly, Defendants do not cite Reinoso's testimony even once in the Supplement.

- Dr. Buchanan was aggressive during the assessment team meeting and cut off a student teacher from speaking, Def. Supp. 3 – but Reinoso testified this claim *had nothing to do with sexual harassment, and played no role in his finding*.  Pl. SUMF ¶ 86 (citing Reinoso Tr. 188:17-189:3, 199:6-13).

- Dr. Buchanan was no longer authorized to be on any school campus in Iberville Parish based on concerns of its Superintendent, Def. Supp. 4, 6 – but the Superintendent testified this *had nothing to do with sexual harassment*, Pl. SUMF ¶¶ 38-40, and Reinoso testified that the matter *played no role in his finding*.  Pl. SUMF ¶ 87 (citing Reinoso Tr. 148:4-150:19).[3]

- Dr. Buchanan allegedly risked impending placements at schools in the Zachary Community School System, Def. Supp. 5 – but Reinoso testified that *had nothing to do with sexual harassment, and played no role in his finding*.  Pl. SUMF ¶ 89 (citing Reinoso Tr. 139:3-144:23).

- Dr. Buchanan allegedly "use[d] profanity in the classroom," Def. Supp. 5 – yet Reinoso testified *the use of expletives and colloquialisms was not sexual harassment*, Pl. SUMF ¶ 92, as reinforced by other Defendants. Pl. SUMF ¶ 106 (citing Reinoso, Alexander, and Monaco transcripts).[4]

To be sure, Defendants' Supplement also cites the few statements attributed to Dr. Buchanan that Reinoso said he believed qualified as sexual harassment.[5]  However, by empha-sizing the many irrelevant statements, defense counsel are as culpable as Defendants in indis-criminately seizing on things they think "sound bad" but don't come close to a legal justification for termination.  *See* Pl. Consol. Mem. § I.  As with Defendants' actions in the termination process, nowhere does the Supplement attempt to show LSU's "findings" meet any legal test for "harassment," much less that they were severe, pervasive and objectively offensive so as to deny

---

[3]  Defendants' counsel also attended the deposition of Iberville Parish superintendent Ed Cancienne and are well aware his complaint had no conceivable connection to sexual harassment.  Cancienne Tr. 4, 44:7-15, 93:15-101:10.

[4]  These are only some of the allegations in Reinoso's report that he later admitted did not constitute sexual harassment, but that Defendants Andrew and Alexander relied upon, and that Defendant Monaco included in his presentation to LSU's Board of Supervisors (and that the faculty committee considered) in pursuing Buchanan's ter-mination.  *See* Pl. Consol. Mem. 6-12; Pl. SUMF ¶¶ 86-95, 100, 103-106, 117-118, 131, 136, 144, 149-150, 152-53.

[5]  These few statements were limited to one about birth control and avoiding pregnancy during the program, another about a student's fiancée being "supportive now while the sex is good," suggestions that Buchanan men-tioned her own sex life, and the use of profanity in certain unspecified contexts.  Def. Supp. 2-3, 5-6.  Defendants rely heavily on the deposition testimony of Karen Donnelly, but fail to cite her statements that any use of profanity by Dr. Buchanan was "occasional[]" and "not very often."  Donnelly Tr. 24:21-24 (Ex. 64).

educational opportunities, as the Constitution requires. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 652 (1999); *DeJohn v. Temple Univ.*, 537 F.3d 301, 317-18 (3d Cir. 2008) ("Absent any requirement … of severity or pervasiveness—that is, … that the conduct objectively and subjectively creates a hostile environment or substantially interferes with an individual's work— the policy provides no shelter for core protected speech.") (citing *Saxe v. State College Area Sch. Dist.*, 240 F.3d 200, 210-11 (3d Cir. 2001) (citing *Davis*)).

Defendants never attempt to establish the constitutionality of the LSU sexual harassment policies PS-73 and PS-95 that they used to fire Dr. Buchanan. *See* Pl. Consol. Mem. §§ I.B-C. The Supplement also fails to recognize, just like the LSU termination process, the pedagogical basis for Dr. Buchanan's speech and teaching methods. *Id*. 8-9, 10 n.15; Pl. SUMF ¶ 119 & Tab 11. Instead, the Defendants simply repeat – without citation to legal authority – that "Plaintiff cannot prove her speech was protected by the First Amendment," Def. Supp. 7-8; *compare* Def. Mot. § II.D, while insisting their actions were motivated by "Dr. Buchanan's behaviors while mentoring LSU students." Def. Supp. 8. This only reinforces that "Defendants appear to admit the speech at issue was 'part of [Dr. Buchanan's] "pedagogy,"'" Pl. Consol. Mem. 15, and that – contrary to the bare assertions here – the constitutional protection for Dr. Buchanan's claims regarding her pedagogical speech has been thoroughly substantiated. *See* Pl. Consol. Mem. § I.A.

On the issue of due process, Defendants' mere listing of the steps LSU took in terminating Dr. Buchanan, Def. Supp. 8 – again, without citation to legal authority – does not establish that she received meaningful notice and an opportunity to respond as the Fourteenth Amendment requires. *See* Pl. Consol. Mem. § II. Simply "follow[ing] procedures" and ensuring that Dr. Buchanan "received notices" does not demonstrate these processes were constitutionally adequate. Def. Supp. 8. As Plaintiff showed, the fact that everyone at each stage of the process –

including all Defendants – operated out of the "Reinoso playbook," which intermingled non-sanctionable averments (constituting a majority of them) alongside (the few) arguable claims, without differentiating one from the other, meant Dr. Buchanan was never informed of the *specific* allegations against her, or of the *specific* material claimed to support dismissal based on sexual harassment.  Pl. Consol. Mem. 24-25.

These failings show why Dr. Buchanan's "appeal[] to Chancellor Alexander" and plea to the Board of Supervisors, Def. Supp. 8, fall short of constitutional due process, as it was not until bringing suit and deposing Reinoso and others that Buchanan first learned what claims even LSU believed might support the charges, and which ones already had been discounted as uncorroborated or irrelevant.  Pl. Consol. Mem. 23, 25.  Nor does the fact that Dr. Buchanan had "the opportunity to cross examine the University Presenter's witnesses," Def. Supp. 8, overcome the fact that her *accusers* (three students Reinoso interviewed, and public school administrators in the parishes, with whom he did not meet) were never presented for questioning.  Pl. Consol. Mem. 26 n.37.

*   *   *   *

To be clear:  Dr. Buchanan was not terminated for "inappropriate" behavior generally, or for claims she "unprofessional" or "abusive."  Defendants acknowledge as much.  Reinoso Tr. 154:16-19 (Ex. 65); Andrew Tr. 289:10-294:8 (Ex. 66); Monaco Tr. 138:17-139:15.  She was not fired for failing to teach students.  Or for "nonperformance of duties."  Pl. SUMF Tab 12 at 2 (LSU PS-104).  Rather, Defendants sought and effected Buchanan's termination based on her constitutionally protected speech, *and for no other reason*, claiming it was "sexual harassment."  Pl. SUMF ¶¶ 37, 43, 53, 81, 85, 92-96, 100, 103-104, 109, 112, 118, 139, 152.  More specifically, LSU claimed Dr. Buchanan violated PS-73 and PS-95, yet Defendants have now

ultimately admitted that the bringing of charges, and their prosecution to termination, rested predominantly on utterances **having nothing whatsoever to do with sexual harassment**. Reinoso repeated irrelevant and uncorroborated allegations in his report without revealing that key detail; Andrew cited them to invoke PS-104 proceedings; Alexander relied on them to overrule the PS-104 faculty committee recommendation; and Monaco presented them to the Board to support Alexander's recommendation.  The Defendants' Supplement does nothing but underscore these damning facts.

This targeting of such admittedly nonsanctionable speech demonstrates the malleability and imprecision of PS-73 and PS-95 that render them unconstitutional on their face, reinforces that they were applied to Dr. Buchanan in violation of her rights under the First Amendment, and left the procedures used to terminate her plainly inadequate for constitutional due process.  For these reasons, and for those stated above and in her Motion for Summary Judgment and Opposition to Defendants' Motions for Judgment on the Pleadings and for Summary Judgment, Plaintiff Dr. Teresa Buchanan respectfully requests that the Court grant summary judgment in her favor, and deny Defendants' motions.

DATED: May 3, 2017

<div style="margin-left:40%">

Respectfully submitted,

     /s/ Robert Corn-Revere
ROBERT CORN-REVERE (*pro hac vice*)
     bobcornrevere@dwt.com
RONALD G. LONDON (*pro hac vice*)
     ronnielondon@dwt.com
LISA B. ZYCHERMAN (*pro hac vice*)
     lisazycherman@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006
Telephone: (202) 973-4200

</div>

     /s/ Floyd J. Falcon, Jr.
FLOYD J. FALCON, JR. (Bar # 5424)
AVANT & FALCON
429 Government Street
Baton Rouge, Louisiana 70802
Telephone: (225) 387-4462

Attorneys for Plaintiff Teresa Buchanan

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing Response to Supplemental Memorandum in Support of Defendants' Motion for Summary Judgment was served on all counsel of record on the 3rd day of May, 2017 via use of the Court's ECF system.

<div align="center">

*/s/ Robert Corn-Revere*
Robert Corn-Revere

</div>