UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

TERESA BUCHANAN                                    CIVIL ACTION

VERSUS                                             NO. 16- 41-SDD-EWD

F. KING ALEXANDER, ET AL

### REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION FOR SUMMARY JUDGMENT

F. King Alexander, Damon Andrew, A.G. Monaco and Gaston Reinoso (collectively "Defendants"), in their personal and official capacities, reply to the opposition to their Motion for Judgment on the Pleadings (Doc. 26) and alternative Motion for Summary Judgment (Doc. 30) presented by Teresa Buchanan ("Plaintiff") in her Consolidated Memorandum (Doc. 35-1) and Response to Supplemental Memorandum in Support of Defendants' Motion for Summary Judgment (Doc. 42).

I.    **Procedural Background**

After the deadline to "join other parties or to amend the pleadings" (Doc. 22), Defendants filed a Motion for Rule 12(c) Judgment on the Pleadings (Doc. 26) asserting the Complaint (Doc. 1) and Defendants' Affirmative Defenses and Answer (Doc. 14) established all material facts necessary for entry of a Judgment on the Pleadings dismissing the Complaint for failure to state a claim pursuant to 42 U.S.C. §§1983 and 1988 for alleged violations of the First and Fourteenth Amendments upon which declaratory relief, injunctive relief or monetary damages can be granted (Counts I and II) or pursuant to 28 U.S.C. §2201, *et seq*. upon which declaratory or injunctive relief can be granted (Counts III and IV). Alternatively, Defendants asserted, if Plaintiff stated a claim, Plaintiff lacked standing. Finally, Andrew, Monaco and Reinoso asserted if

Plaintiff has standing, the claims against them are barred by the statute of limitations.

## II. LAW AND ARGUMENT

### A. Status of Defendants' Rule 12(c) Motion for Judgment on the Pleadings

Although Plaintiff argues the pending Rule 12(c) Motion has been converted to a Rule 56 Motion by Plaintiffs' presentation of extrinsic evidence[1] and Defendants abandoned the Rule 12(c) Motion by filing a Motion for Summary Judgment,[2] Plaintiff's arguments are clearly in conflict with Defendants' pleadings and FRCP Rule 12(d). FRCP Rule 12(d) provides when "matters outside the pleadings are presented to and not excluded by the court the motion must be treated as one for summary judgment." Plaintiff's presentation of extrinsic evidence is insufficient to convert Defendants' Rule 12(c) Motion to a Rule 56 Motion.[3] FRCP Rule 12(d) clearly authorizes this Court to exclude any evidence presented by Plaintiff to oppose the Rule 12(c) Motion and reserves this Court's power to rule on the Rule 12(c) Motion solely on the basis of the pleadings.

In order to comply with the deadlines to file dispositive motions in this Court's Scheduling Order (Doc. 22), Defendants' filed a Motion for Summary Judgment (Doc. 30) for consideration in the event Defendants' Rule 12(c) Motion did not dispose of all claims against all defendants. Defendants clearly stated their Motion for Summary Judgment was presented in the event the "Court does not dismiss all of the claims in the Complaint ... pursuant to the pending Motion for Rule 12(c) Judgment on the Pleadings."[4] After this Court extended the deadline for dispositive motions (Doc. 32),

---

[1] Doc. 35-1, footnote 1
[2] Doc. 42, footnote 1
[3] Doc. 28, pp. 3-4
[4] Doc. 30-1, p. 1

Defendants sought and were granted leave to file a Supplemental Memorandum in Support of Motion for Summary Judgment (Doc. 38 and Doc. 33-1).

There is no legal support for Plaintiff's assertion that Defendants' Motion for Summary Judgment converted the Rule 12(c) Motion to a Rule 56 Motion. In support of Plaintiff's assertions she cites G*amel v. Grant Prideco, L.P.*, 625 F. App'x 690, 693 (5th Cir. 2015) and *McDonnel v. Estelle*, 666 F.2d 246, 250 (5th Cir. 1982), neither of which support her assertions. In *Gamel*, where both parties relied on extrinsic evidence and the district court's ruling granting a Rule 12(b)(6) Motion rested on extrinsic evidence necessary to determine timeliness of the suit, the Fifth Circuit held that the standard of review on appeal was the Motion for Summary Judgment standard. In *McDonnel*, a case involving a habeas petition, the court stated only "if the court considers any evidence outside the pleadings" [Emphasis added.] is the Rule 12(c) Motion converted.

Defendants did not rely upon or attach any extrinsic evidence to the Rule 12(c) Motion and maintain that no extrinsic evidence is necessary for this Court to rule upon the pending Rule 12(c) Motion. Defendants' Rule 12(c) Motion raises legal issues determinable by the undisputed facts established by the pleadings which were on file at the time the Rule 12(c) Motion was presented. There is no necessity to consider extrinsic evidence to determine that the Rule 12(c) Motion should be granted.

For the reasons stated herein and in Defendants' Memorandum in Support of Motion for Judgment on the Pleadings, Defendants urge this Court to grant their Rule 12(c) Motion. If any causes of action or defendants remain after ruling on the Rule 12(c) Motion, this Court can consider the evidence presented in connection with the parties' motions for summary judgment relevant to those remaining causes of action and defendants.

### B. Alternative Motion for Summary Judgment

#### 1. Plaintiff's Speech is not protected by the First Amendment.

Plaintiff argues that her harassing, intimidating and offensive classroom behavior and speech are protected by the First Amendment which she alleges falls within the protections afforded to academic freedom. The jurisprudence cited by Plaintiff is inapplicable as the cited cases do not address situations where a faculty member created a hostile learning environment by intimidating and demeaning students or was banned from schools participating in university programs.

Plaintiff admits that the PS-104 hearing which led to her termination was initiated because students and "school administrators had complained regarding Plaintiff's inappropriate behavior," which led to Dean Andrew requesting an investigation.[5] The Deposition of Jennifer Curry[6] details her meetings with students who declined to speak with Dr. Buchanan's supervisor, Dr. Cheek, because the students were aware that no action had been taken in response to prior complaints made to Dr. Cheek.[7] Dr. Cheek corroborated the student's assertions made to Curry that a cohort of students had complained about Dr. Buchanan's behavior the prior year.[8] Dr. Cheek confirmed to Dean Andrew that complaints about Dr. Buchanan "were nothing new" and that 10-12 students from the prior year's cohort complained and had written a letter to Karen Callendar.[9]

Dr. Cheek further confirmed that Dr. Buchanan had "been kicked out of

---

[5] Doc. 35-2, ¶18
[6] Doc. 35-4, Ex. 5
[7] Doc. 35-4, Ex. 5, pp. 62-72
[8] Doc. 35-4, Ex. 5, pp. 76-77
[9] Doc. 35-4, Ex. 5, pp. 79-81

schools"[10] and that Dr. Cheek had reported the complaints regarding Dr. Buchanan's behavior to Dean Andrew's predecessor, Dr. Lindsay.[11] Dr. Curry reported that Dr. Buchanan's students "were very fearful of having another class with her."[12] An email from a student to Dr. Curry corroborated the in-person reports Dr. Curry received from students and information in documentation of prior complaints about Dr. Buchanan.[13] Dr. Curry also testified that she received a call from the Superintendent of Iberville Schools, who advised that Dr. Buchanan was completely inappropriate and he did not want her back in the Iberville Schools.[14]

While classroom discussions can fall within protected speech, Plaintiff's conclusion that all speech within a classroom is protected is incorrect. Plaintiff's conclusion that the First Amendment prohibits university officials from investigating complaints of students and school administrators, recommending the initiation of a hearing process to determine whether a faculty member has violated university policies and recommending to the board with the authority and responsibility to remove tenured faculty members is absurd. Defendants' actions in light of the numerous complaints regarding Plaintiff's behavior were objectively reasonable and necessary to protect students and the student teaching portion of the Pre-K-3 program.

The instant case is analogous to *Martin v. Parrish*, 805 F. 2d 583 (5th Cir. 1986) where the Court held speech made on a college campus to an "unwilling, 'captive' audience" was not protected by the First Amendment. In *Parrish* the Court recognized, "[t]he "rights" of the speaker are thus always tempered by a consideration of the rights

---

[10] Doc. 35-4, Ex. 5, pp. 81, l.11
[11] Doc. 35-4, Ex. 5, p. 81, l. 12
[12] Doc. 35-4, Ex. 5, p. 88, ll. 6-7
[13] Doc. 35-4, Ex. 5, pp. 93-94
[14] Doc. 35-4, Ex. 5, pp. 101-103

of the audience and the public purpose served, or disserved, by his speech." *Id* at p. 584. Plaintiff like the appellant in *Parrish* seeks to ignore her audience and the lack of purpose in her offensive, harassing and intimidating behavior and speech. The students in Dr. Buchanan's classroom, like the students in Martin's classroom, paid to be taught and not harassed or intimidated. This Court should, like the courts in *Parrish* uphold Plaintiff's termination by the Board of Supervisors supported by the PS-104 Committee's determination that Plaintiff's "use of profanity, poorly worded jokes and sometimes sexually explicit 'jokes'" created a hostile learning environment.

Additionally, the ruling in *Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684, 75 L.Ed. 2d (1983) finding that "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee … a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick*, 461 U.S. at 147, 103 S. Ct. at 1690. Considering the content, form and context of Plaintiff's speech as revealed by the evidence relied upon by Plaintiff, her speech is not protected by the First Amendment.

A determination that Plaintiff's speech is not protected by the First Amendment requires dismissal of all claims against all defendants.

## 2. The evidence demonstrates that Plaintiff was afforded due process.

Plaintiff argues that she was not afforded due process because she was not aware of the charges against her; however, evidence filed by Plaintiff demonstrates otherwise.[15] Plaintiff acknowledged receipt of a packet and provided a written response to the allegation that her "teaching was inappropriate or any language was

---

[15] Doc. 35-6, Ex. 11, Letter from Buchanan to Bell

unwelcome."[16] Plaintiff acknowledges she was given a set of complaints and stated she disagreed with the findings of the HR investigation which lasted from December 2013 through May 2014.[17] Plaintiff denied violating a student's right to confidentiality regarding the student's disability status. In her response to Provost Bell urging him not to convene a PS-104 Committee, Plaintiff directly addresses complaints about her telling students not to get pregnant while in the program[18] and regarding sexual orientation of individuals who wore brown pants.[19]

Plaintiff acknowledges that the members of the PS-104 Committee unanimously determined that she "violated PS-73 dealing with Sexual Harassment and PS-95 sexual Harassment of Students through her use of profanity, poorly worded jokes, and sometimes sexually explicit 'jokes'."[20] The PS-104 Committee concluded that the violations which occurred on and off campus "fall into the category of 'creating a hostile learning environment.'"[21] Additionally, the PS-104 Committee found evidence that "individuals observing the behaviors were disturbed by the behavior."[22] Further, the PS-104 Committee found that "Dr. Buchanan was direct about her occasional use of profanity and off flavor jokes as part of her teaching methodology"[23] and recommended that Plaintiff be required to "agree in writing that she will cease the behavior."[24].

The numerous exhibits filed by Plaintiff (Doc. 35-4) and the complaints regarding Plaintiff demonstrate her classroom behavior is not subject to protection by Academic

---

[16] Doc. 35-6, Ex. 11, p. 1
[17] Doc. 35-6, Ex. 11, p. 1
[18] Doc. 35-6, Ex. 11, p. 3
[19] Doc. 35-6, Ex. 11, p. 4
[20] Doc. 35-6, Ex. 13, Oetting – 00248-00249
[21] Doc. 35-6, Ex. 13, Oetting - 00249
[22] Doc. 35-6, Ex. 13, Oetting - 00249
[23] Doc. 35-6, Ex. 13, Oetting - 00249
[24] Doc. 35-6, Ex. 13, Oetting - 00250

Freedom but were instead harassment directed toward numerous students which created a hostile learning environment.[25]. The PS-104 transcript[26] shows that numerous witnesses testified and Dr. Buchanan had the opportunity to question LSU's witnesses and to present witnesses on her behalf.

Plaintiff's contention that she was not afforded due process is contradicted by the numerous exhibits attached her Motion for Summary Judgment and Response to Defendants' Supplement Memorandum (Docs. 35 – 35-7 and 42-42-1). Further, Plaintiff's assertion that "it was not until bringing suit and deposing Reinoso and others that Buchanan first learned what claims even LSU believed might support the charges"[27] is false. Defendants have proved that Buchanan was made aware of the complaints made against her by students by Dr. Cheek[28] and was aware that school administrators had requested that she not return to certain schools long before the PS-104 hearing.[29] Additionally, the hearing transcript[30] demonstrates that Reinoso, Andrew and Curry testified at the PS-104 hearing and that Plaintiff had the opportunity to question them.

Plaintiff cites *Jones v. Louisiana Bd. of Sup'rs of University of Louisiana Systems,* 809 F.3d 231, 236 (5th Cir 2015) in support of her assertion that Defendants cannot demonstrate that she received notice and an opportunity to be heard. Plaintiff's reliance on *Jones,* who was terminated for budgetary reasons is misplaced; however, the Court did not agree that Jones was entitled to a face-to-face meeting with the ultimate decision-maker and affirmed the trial court's dismissal of Jones' suit. Plaintiff,

---

[25] Doc. 35-7, Ex. 42, Curry - 00044
[26] Doc. 35-6, Ex. 20
[27] Doc. 42, p. 5
[28] Doc. 35-6, Ex. 5, p. 81
[29] Doc. 35-6, Ex. 5, pp. 81 and 84
[30] Doc. 35-6, Ex. 20, TR 003

who admits that she participated in the PS-104 Committee hearing, appealed to Chancellor Alexander and appeared in person before the ultimate decision-maker, was clearly afforded due process.

## III. CONCLUSION

Defendants urge this Court to grant their Rule 12(c) Motion with respect to any causes of action and any defendants which can be dismissed without consideration of extrinsic evidence. If any causes of action or defendants remain, this Court can consider the evidence presented in connection with the parties' motions for summary judgment relevant to those causes of action.

While Plaintiff asserts denial of her First Amendment right on the basis of academic freedom and denial of her Fourteenth Amendment right to due process, the evidence presented by the parties disproves Plaintiff's speech falls within academic freedom or that she was denied due process. Any claims not dismissed pursuant to Rule 12(c) should be dismissed with prejudice by granting Defendants' Motion for Summary Judgment.

Respectfully submitted:

JEFF LANDRY
Attorney General
By:   /s/  Sheri M. Morris
Sheri M. Morris, LA Bar No. 20937
Carlton "Trey" Jones, III, LA Bar No. 25732
ROEDEL, PARSONS, KOCH, BLACHE,
   BALHOFF & McCOLLISTER
8440 Jefferson Highway, Suite 301
Baton Rouge, LA 70809
Phone: (225)929-7033  Fax: (225)928-4925
Emails: SMorris@RoedelParsons.com
            CJones@RoedelParsons.com
*Special Assistant Attorneys General*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been served upon all counsel via the Court's electronic filing system on this 19th day of May, 2017.

/s/    Sheri M. Morris