IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERESA BUCHANAN,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:16-cv-00041-SDD-EWD |
| | ) |
| **F. KING ALEXANDER**, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

"The first rule of holes, according to an old saying, is to stop digging." *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 702 (7th Cir. 2014). Defendants, perhaps, have not heard this adage, because their Opposition (Dkt. 43) ("Defs. Opp.") to Plaintiff's Motion for Summary Judgment (Dkt. 35-1) ("Pl. SJ Mot.") only reinforces why LSU's termination of Dr. Teresa Buchanan for "sexual harassment" was unconstitutional. They insist they acted under anti-harassment policies based on a federal "blueprint," yet fail to offer one whisper of a defense (and cite *zero* authority) supporting the constitutionality of the policies, *when their own submissions to LSU's Board of Supervisors illustrate why they violate the First Amendment*. *See* Pl. SJ Mot. 27-28 (quoting legal memoranda Defendants supplied to Board). Defendants also claim they terminated Dr. Buchanan for "sexual harassment," when their own findings show they fired her for constitutionally-protected pedagogical speech wholly unrelated to sex, gender, or harassment. The Court should accordingly grant Plaintiff's motion for summary judgment.

**I.  Defendants Concede LSU's Anti-Harassment Policies Are Facially Unconstitutional**

Through five submissions to this Court (Answer, Rule 12(c) and 56 motions, Rule 56 supplement and, now, Rule 56 opposition), Defendants have never defended PS-73 and PS-95,

LSU's sexual harassment policies, against Plaintiff's facial First Amendment challenge. Compl. ¶¶ 13-80 (Dkt. 1); Pl. SJ Mot. § I.B; *see* Defs. SJ Mot. (Dkt. 30-1) 18.[1] Defendants acknowledge LSU's policies mirror a federal "blueprint" and assert their actions therefore were "reasonable," *e.g.*, Defs. SJ Mot. 9-10, but make no argument and cite no authority to support the policies' constitutionality, despite having the burden on that issue. *E.g.*, *Trebert v. City of New Orleans*, 2005 WL 273253, at *4 (E.D. La. Feb. 2, 2005) (citing *Hays Cty. Guardian v. Supple*, 969 F.2d 111, 118 (5th Cir. 1992)). In fact, the only documents in which Defendants discuss the harassment policies' facial validity explain why they violate the First Amendment. *See* Pl. SJ Mot. 27-28 (quoting legal analyses Defendants submitted to Board).

LSU's policies do not limit sanctionable sexual harassment based on speech to only that which is severe, pervasive, and objectively offensive enough to deny educational opportunities as the First Amendment requires.[2] As a consequence, those malleable policies enabled Dr. Buchanan's termination for saying things Defendants later admitted had no connection to sexual harassment. *See* Pl. SJ Mot. 7-11, 20-21 & §§ I.C, II; Pl. Resp. 1-4. Yet Defendants' Opposition breathes not a word about the constitutionality of the challenged policies, or about the opacity of Reinoso's report regarding what did, and did not, contribute to the sexual harassment finding. *See* Defs. Opp. *passim*; *see also* Defs. SJ Suppl. *passim*. At this point, Defendants' silence can only be taken as conceding the issue. *E.g.*, *Ward v. Midwestern State Univ.*, 217 F. App'x 325, 329 (5th Cir. 2007).

---

[1] It is not possible to cite a specific page on this issue in Defendants' Opposition to Plaintiff's Motion for Summary Judgment because it fails to address the facial validity of the policies at all. Defs. Opp. *passim*.

[2] *See* Pl. SJ Mot. § I.B. *See also* Plaintiff's Response (Dkt. 42) ("Pl. Resp.") to Defendants' Supplement to Motion for Summary Judgment (Dkt. 40) ("Defs. SJ Suppl.") at 3-4 (citing *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 652 (1999); *DeJohn v. Temple Univ.*, 537 F.3d 301, 317-18 (3d Cir. 2008)).

## II. LSU's Policies Were Applied Unconstitutionally to Terminate Dr. Buchanan

As Plaintiff has shown, the sexual harassment finding against Dr. Buchanan rested in all but a few particulars on speech LSU's "expert," Director Reinoso, admitted was uncorroborated or did not constitute sexual harassment – but were relied on at every stage of termination proceedings. *See* Pl. SJ Mot. 7-11, 20-21 & §§ I.C, II; Pl. Resp. 1-4.[3] In their summary judgment opposition, Defendants continue harping on things Dr. Buchanan was alleged to have said or done that Reinoso (and others) ***admit*** did not amount to sexual harassment, but that Dean Andrew, the PS-104 Faculty Committee, President Alexander, and LSU's Board all cited as part of the effort to terminate Dr. Buchanan. *See* Pl. SJ. Mot. § I.B, II; Pl. Resp., *passim*.

Defendants defend the firing as justified despite Dr. Buchanan's First Amendment rights on grounds that she was "aggressive during [an] assessment team meeting," Defs. Opp. 4, because she was allegedly "kicked out of schools" where LSU student teachers had placements, *id*. 4, 5, or because of "lack of 'professionalism,'" *id*. 6, or based on a "complaint of the Iberville Superintendent" or "behavior [at] Iberville Schools and Zachary Schools." *Id*. 6-7. Yet all of these things have been expressly disavowed as serving as bases for any sexual harassment finding.[4] Defendants have nothing to say about these disavowals, nor do they attempt to explain

---

[3] Defendants try to dispute Plaintiff's SUMF ¶ 96, which stated Reinoso "admits he cited Buchanan's speech as the basis for finding she violated LSU's sexual harassment policies." But this dispute conflicts with ¶ 53 of their Answer (Dkt. 14), which admitted "Reinoso … cited Plaintiff's speech as the basis for finding that she violated LSU's sexual harassment policies." Defendants base this supposed dispute on their claim that "Reinoso identified certain of Buchanan's *sexually-based comments* directed to students and about students in the classroom as a basis" for his finding. Defs. Resp. SUMF ¶ 96 (emphasis added). This is not a genuine dispute of material fact, but rather is a characterization of fact. What is *material*, however, is that this statement clearly admits that Reinoso's decision was based on Buchanan's speech. The same internal contradiction infects Defendants' attempt to dispute that President Alexander recommended termination based on Dr. Buchanan's speech. *Compare* Pl. SUMF ¶ 152 ("Alexander explicitly cited Buchanan's speech in explaining his decision to recommend dismissal for cause.") (citing Ans. ¶¶ 50, 51), *with* Defs. Resp. SUMF ¶ 152 ("Disputed. President Alexander identified particular comments by Buchanan directed to and about students in the classroom as a basis for explaining his recommendation to the LSU Board of Supervisors.").

[4] Pl. SJ Mot. 7-8, 20-21 & nn.12-13, 30-31, 33; Pl. Resp. 2-3 & nn.2-4. *See also* Pl. SUMF ¶¶ 85-87, 89, 91-94; *accord* Defs. Resp. Pl. SUMF ¶¶ 85-87 (undisputed), 89 (undisputed), 91 (undisputed). Defendants object to Pl. SUMF ¶¶ 92-94, but only on the asserted grounds that they view these statements of facts to be opinion. However,

3

how or why these accusations were used in termination proceedings despite an absence of any conceivable connection to sexual harassment. And on the few parts of Plaintiff's motion and opposition where Defendants do engage, their brief "arguments" do nothing to undermine Dr. Buchanan's entitlement to summary judgment.

Defendants reiterate their assertion that Dr. Buchanan "cannot prove her speech was protected by the First Amendment," Defs. Opp. 3-6; *see also*, *e.g.*, Defs. SJ Mot. § II.D, but utterly fail to address the issue substantively. After initially citing *Garcetti v. Ceballos*, 547 U.S. 410 (2006), for the proposition that government employees lack First Amendment protection for job-related speech, Defs. SJ Mot. 15-17, they offer no response whatsoever to the arguments that the rule of *Garcetti* excludes academic speech, and that the Fifth Circuit recognizes that "classroom discussion is protected activity." *Kingsville Indep. Sch. Dist. v. Cooper*, 611 F.2d 1109, 1113 (5th Cir. 1980). *See* Pl. SJ Mot. 12-16. Instead, Defendants only repeat that Dr. Buchanan's termination was for interactions with "students and others," Defs. Opp. 3, including "in the classroom," *id*. 5-6, and thereby confirm the issue in this case was over the "valid[ity] of [her] pedagogy." *Id*. at 5. Defendants thus concede the speech at issue falls squarely within First Amendment protection for academic freedom.[5]

The lone case Defendants cite, *Martin v. Parrish*, 805 F.2d 583 (5th Cir. 1986), Defs. Opp. 5, was already distinguished in Plaintiff's summary judgment motion. *See* Pl. SJ Mot. 14 n.19. In that case, as Defendants even acknowledge, Martin was terminated for speech having "no academic purpose or justification." *Id*. (citing 805 F.2d at 586). In fact, Martin's purpose

---

Defendants cite no countervailing record evidence, and thus have waived any argument that these facts are disputed. *See* Fed. R. Civ. P. 56(c) & (e).

[5] Pl. SJ Mot. 13-15 (citing, *inter alia*, *Cooper*, 611 F.2d at 1113; *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689 (5th Cir. 2007); *Cutter v. Stephen F. Austin State Univ.*, 767 F.3d 462 (5th Cir. 2014); *Kaprelian v. Texas Woman's Univ.*, 509 F.2d 133 (5th Cir. 1975); *Adams v. Trustees of Univ. of N.C.-Wilmington*, 640 F.3d 550 (4th Cir. 2011); *Demers v. Austin*, 746 F.3d 402 (9th Cir. 2014)).

4

was to run his students down, with the Fifth Circuit emphasizing that his speech was not "for any purpose other than cussing out his students as an expression of frustration with their progress," and that it was not an attempt "to motivate them." *Martin*, 805 F.2d at 585.  Here, conversely, there is undisputed evidence in the record that Dr. Buchanan's choice of material and method of presentation were in service of her pedagogy, and were designed to *help* her students become better teachers.[6]  In particular, Defendants do not dispute that Dr. Buchanan explained that her choice of language (for which she was targeted) sought to specifically further educational goals. Nor do Defendants take issue with the fact that that language (to which some objected) was used to instruct student teachers on, for example, coping with the use of everyday language by parents in different communities.  *See* Pl. SJ. Mot. 8-9.[7]  The Opposition leaves no doubt Defendants set out "to fire a tenured professor based on pedagogy and performance, but that the only way [they] could think to do so was through LSU's defective sexual harassment policies." *Id*. 22.

### III.   LSU Violated Dr. Buchanan's Right to Due Process

Defendants through their five submissions also have yet to cite any legal authority supporting their defense that Dr. Buchanan's firing satisfied constitutional due process.[8]  Their Opposition does not respond to any of the cases Plaintiff cited to show the constitutional flaws that tainted LSU's proceedings.  *See* Pl. SJ Mot. 23-26 & nn.36-37.  Instead, the Defendants say the issue is simply that "Plaintiff disagrees with the LSU Board of Supervisors' response."  Defs.

---

[6]  Pl. SUMF ¶¶ 109, 119; *see also* Defs. Resp. SUMF ¶¶ 109 (undisputed), 119 (objection that statement is not material, but no citation to countervailing record evidence, waiving whether facts are disputed under Fed. R. Civ. P. 56(c) & (e)).

[7]  As noted, Dr. Buchanan provided a detailed written description of how she used language for pedagogical purposes, and backed it with research supporting her approach.  Pl. SJ Mot. 10 n.15 (citing Pl. SUMF ¶ 119).  The fact that some objected to the language had nothing to do with "sex" or "harassment," and everything to do with an officious administrator taking offense to what he perceived as personal criticism.  Pl. SJ Mot. 3-4 (citing SUMF ¶¶ 26, 28, 35, 38-39); *id*. 20 (citing same).

[8]  Defs. Mot. J. Pldgs. (Dkt. 26-1) 17; Defs. SJ Mot. (Dkt. 30-1) 17; Defs. SJ Suppl. 8; Defs. Opp. 6-7.

5

Opp. 7. But that is only a manifestation of the problem – the *issue* is that specific charges were never clear at any stage of the process given how Reinoso compiled his finding to mask the allegations, and how decision-makers up the chain relied on his finding. This undermined Buchanan's ability to mount an effective defense, and prevented decision-makers from grasping and evaluating the actual charges. Pl. SJ Mot. 7-11, 20-21 & § II. On this key overarching point, Defendants remain mute.[9]

But Dr. Buchanan's experience was typical of what happens under the Department of Education's "blueprint," which LSU admits it was implementing. Professor Laura Kipnis of Northwestern University, who was charged with (and later cleared of) sexual harassment for publishing an article in the *Chronicle of Higher Education*, has written that "the process is stacked against the accused," and that "typically the accusee doesn't know the precise charges, doesn't know what the evidence is, and can't confront witnesses." Laura Kipnis, UNWANTED ADVANCES 37 (Harper 2017). Check, check, and check. The due process deprivations are obvious, but because schools face the threat of losing federal funding if they fail to vigorously follow the "blueprint," "[t]he safer path is simply to throw everyone accused of anything under the bus." *Id.* 39. That is precisely what happened in this case.[10]

### IV. Dr. Buchanan Sued the Proper Defendants

Given the astonishing lack of engagement with the issues in Defendants' summary judgment pleadings, their accusing *Plaintiff* of "ignor[ing] the most glaring defect in her case" is

---

[9] Defendants continue down the line of attacking Dr. Buchanan's "professionalism" and for being "disagreeable" while repeatedly asserting she allegedly "offended" people. Defs. Opp. 6-7. Again: Dr. Buchanan was not fired for being unprofessional, for "blunt remarks," for failing to carry out duties, or any similar reason.

[10] Kipnis said she was "thinking of cases like that of Teresa Buchanan" when she wrote "[a] student trying to get a professor fired over a joke or some other passing offense is someone who utterly and callously misunderstands the consequences of leaving someone else (often with dependents to support) jobless; and someone who has, in fact, seized power while hiding behind the fiction of powerlessness." *Id.* 63.

ironic, to say the least. Defs. Opp. 7. Defendants repeat their assertion that they "did not fire the Plaintiff" and claim she failed to address this issue. *Id*. In point of fact, Dr. Buchanan ***did*** directly address these points, regarding the import of the Board rendering a final decision based on Alexander's recommendation and Monaco's presentation, and the ability to gain effective relief from these Defendants. Pl. SJ Mot. 28-29. Defendants simply have no answer regarding the role each Defendant played in pursuing Dr. Buchanan's termination, and offer no response at all to the fact that LSU's policies give hiring responsibilities to the Dean, HRM, and the President. *See id*. 29 (citing Tab 62). Rather, Defendants are silent, just as they are with respect to Plaintiff's arguments on immunity, and on the statute of limitations. *Id*. § III.[11]

## CONCLUSION

Plaintiff Dr. Teresa Buchanan respectfully asks the Court to grant her Motion for Summary Judgment, and deny Defendants' Motion for Summary Judgment, along with their Motion for Judgment on the Pleadings.

---

[11] Further, disputes of fact are few and far between in this case, and the handful of facts Defendants claim are disputed are not material to Plaintiff's entitlement to summary judgment. Defendants admit most of the material facts, Defs. Resp. SUMF ¶¶ 1-2, 14, 16-18, 24, 27, 30, 32, 44-47, 49-50, 53, 55-56, 59-67, 69-74, 77, 80-82, 84-87, 89-91, 97-99, 101-102, 105, 109-112, 115, 117, 120-122, 128-132, 135-141, 144-151, 153, 155, and effectively admit others by challenging them as "immaterial" but not disputing them, *id*. ¶¶ 3-13, 15, 19-23, 25-26, 28-29, 31, 33-43, 54, 57-58, 68, 75, 78, 83, 103-104, 106, 119, 124-127, 133-134, 154, 156-159, while relabeling others as "opinion," also without disputing them. *Id*. ¶¶ 52, 76, 92-95, 107-108, 114, 116. In the few instances where Defendants identify actual disputes of fact, they fail to cite record materials in support of their position in most cases, *see id*. ¶¶ 79, 88, 100, 113, 118, or they rely on inadmissible hearsay. *Id*. ¶ 51. Such assertions contravene Fed. R. Civ. P. 56(c), allowing the Court to consider those statements undisputed as well. *See* Fed. R. Civ. P. 56(e).

DATED: May 19, 2017

                Respectfully submitted,

                /s/ Robert Corn-Revere
                ROBERT CORN-REVERE (*pro hac vice*)
                    bobcornrevere@dwt.com
                RONALD G. LONDON (*pro hac vice*)
                    ronnielondon@dwt.com
                LISA B. ZYCHERMAN (*pro hac vice*)
                    lisazycherman@dwt.com
                DAVIS WRIGHT TREMAINE LLP
                1919 Pennsylvania Avenue, NW, Suite 800
                Washington, DC 20006
                Telephone: (202) 973-4200

                /s/ Floyd J. Falcon, Jr.
                FLOYD J. FALCON, JR. (Bar # 5424)
                AVANT & FALCON
                429 Government Street
                Baton Rouge, Louisiana 70802
                Telephone: (225) 387-4462

                Attorneys for Plaintiff Teresa Buchanan

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Reply to Defendants' Opposition to Plaintiff's Motion for Summary Judgment was served on all counsel of record on the 19th day of May, 2017 via use of the Court's ECF system.

                                          */s/ Robert Corn-Revere*
                                          Robert Corn-Revere